David H. Krieger, Esq.
Nevada Bar No. 9086
KRIEGER LAW GROUP LLC
HENDERSON OFFICE
2850 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com

Miles N. Clark, Esq.
Nevada Bar No. 13848
Shaina R. Plaksin, Esq.
Nevada Bar No. 13935
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: miles.clark@knepperclark.com
Email: shaina.plaksin@knepperclark.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ROGER BARR, <br><br> Plaintiff, <br> v. <br><br> WELLS FARGO BANK, N.A., and THE BANK OF MISSOURI, <br><br> Defendants. | Civil Action No.: 1:21-cv-00097 <br><br> **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** <br><br> **JURY TRIAL DEMANDED** |

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Bartholomew County, the State of Indiana and because Defendants are subject to personal jurisdiction in Bartholomew County, State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2). Further, Wells Fargo Bank, N.A. has a registered agent of service in Indiana and is listed with the Indiana Secretary of State as a foreign financial institution doing business in Indiana.

**PARTIES**

4. Plaintiff Roger Barr ("Plaintiff") is a natural person residing in Bartholomew County, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is headquartered in Sioux Falls, SD, doing business in the State of Indiana. Wells Fargo is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

6. Defendant The Bank of Missouri ("TBOM") is headquartered in Perryville, MO, doing business in the State of Indiana. Wells Fargo is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

**FACTUAL ALLEGATIONS – FCRA VIOLATIONS**

*GENERAL ALLEGATIONS*

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

9. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

10. On June 6, 2019, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiff's case was assigned Case Number 19-04118-JJG ("Bankruptcy"). BK ECF No. 1.

11. Upon information and belief, Defendant TBOM or its predecessor-in-interest received notice of Plaintiff's bankruptcy.[1]

12. On August 21, 2019, Fifth Third Bank filed a Reaffirmation Agreement, whereby Plaintiff agreed to reaffirm the debt owed to Fifth Third Bank, serviced by Wells Fargo,[2] on secured property of a primary residence mortgage on property located at 5039 Birchwood Street, Columbus, IN 47201. BK ECF No. 14. As part of this reaffirmation agreement, Plaintiff agreed to pay monthly installments beyond the end of his thr Bankruptcy and acknowledged that the debt would not be discharged. *See id.* at 1, 7.

13. On September 17, 2019, Plaintiff obtained an Order of Discharge in the Bankruptcy. BK ECF No. 15. Plaintiff's Order of Discharge expressly stated: "[D]ebts covered by a valid reaffirmation agreement are not discharged." *Id.* at 2.

14. Furthering the FCRA's goal of accuracy, a consumer may dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a consumer reporting agency ("CRA") must notify the source or furnisher of information, who must in turn conduct an investigation of the disputed item pursuant to Section[3] 1681s-2(b).

---

[1] Plaintiff listed a debt to "Mabt – Genesis Retail" date opened 2/10/14 on his bankruptcy schedules. Upon information and belief, "Mabt" meant Mid-America Bank and Trust, which was acquired by TBOM on or about March 26, 2018. The relevant tradeline at issue below reads "TBOM - Genesis Retail" with the same date opened.

[2] The reaffirmation agreement is signed by the Vice President Loan Documentation of Wells Fargo "as servicer for the creditor." *See* BK ECF No. 14, at 8.

[3] Unless otherwise noted, herein, all references to "Section," are to the sections or subsections of United States Code Chapter 15.

15. Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the credit reporting agency ("CRA"). 15 U.S.C. § 1681s-2(b)(1)(B).

16. The furnisher must timely report the results of the investigation to the CRA, which in turn must timely notify the disputing consumer regarding the results of the reinvestigation. *See* 15 U.S.C. §§ 1681s-2(b)(1)(C), 1681i(a)(6).

17. If the furnisher's investigation reveals that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

18. Additionally, Defendants' conduct described herein also failed to comply with the Consumer Data Industry Association's ("CDIA's") Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

19. The CDIA publishes the Metro 2 reporting standards to assist furnishers (like Defendants) with their compliance requirements under the FCRA.

20. A furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted). *See also Wylie v. TransUnion, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

21. On information and belief, Defendants herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

22. The Metro 2 format guidelines provide specific instruction for properly reporting a secured debt for which a consumer reaffirms in a Chapter 7 bankruptcy. *See, e.g.*, 2017 CDIA Credit Reporting Resource Guide ("2017 Metro 2"), Frequently Asked Question ("FAQ") 27(a), at page 6-17. The instruction provided is: "Account information as it applies going forward." *Id*.

23. Despite the Metro 2 Format's instructions, Defendants herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Bankruptcy, as further set forth below.

24. Thus, the incomplete and inaccurate reporting provided to Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

25. This is true both under Metro 2, and if Metro 2 does not apply. Metro 2 requires furnishers report accurate post-discharge payment history for a reaffirmed secured debt, such as a mortgage or automobile. *See supra* ¶ 22 (citing Metro 2 FAQ 27(a)).

26. The inaccurate reporting provided to Plaintiff as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

**WELLS FARGO AND TBOM FCRA VIOLATIONS**

*Wells Fargo and TBOM Violate 15 U.S.C. § 1681s-2(b) (Count 1)*

27. Plaintiff obtained his credit disclosures pursuant to Section 1681g from Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") (collectively, "Disclosures"), on or about November 23, 2019.  Both of these Disclosures included a tradeline for Wells Fargo partial account no. 93605**** ("Wells Fargo Account").  Plaintiff's Experian Disclosure also included a tradeline for TBOM – Genesis Retail partial account no. 768600**** ("TBOM Account").

28. For the Trans Union Disclosure, Wells Fargo inaccurately reported for Plaintiff's Wells Fargo Account: "Remarks: Chapter 7 Bankruptcy."  For the Experian Disclosure, Wells Fargo inaccurately reported for Plaintiff's Wells Fargo Account a Status of "Discharged through Bankruptcy Chapter 7."  However, both of these reportings were inaccurate because, as explained *supra* ¶¶ 12–13, Plaintiff's debt to Wells Fargo was reaffirmed during the Bankruptcy and not discharged.

29. Additionally, on Plaintiff's Experian Disclosure, TBOM inaccurately reported a "Status" of "Paid in settlement."  Plaintiff's TBOM Account was included and discharged in the Bankruptcy, which the Status should have reflected.

30. Pursuant to 15 U.S.C. § 1681i(a)(2), letters dated December 13, 2019, were sent from Plaintiff to Trans Union and Experian, disputing the reporting of his Wells Fargo Account tradeline that appeared on both of his Disclosures.  The letter to Experian also disputed Plaintiff's TBOM Account tradeline appearing on his Experian Disclosure.

31. Plaintiff sent his disputes separately to Trans Union and Experian, in writing, outlining claimed incorrect and inaccurate credit information furnished by Wells Fargo and TBOM.  Specifically, a letter ("Dispute Letter(s)") was sent to each from Plaintiff, requesting the inaccurate and incorrect derogatory information be corrected.

32. Upon information and belief, upon receiving the respective Dispute Letters, Trans Union and Experian each notified Wells Fargo of the dispute, and Experian also notified TBOM of the dispute, based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

33. Upon receipt of the respective notices from Trans Union and Experian, Wells Fargo and TBOM were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b).

34. On January 24, 2020, Plaintiff received a "reinvestigation" report from Trans Union ("Trans Union Reinvestigation"). Trans Union indicated that it had received the Trans Union Dispute Letter and investigated Plaintiff's dispute. Upon information and belief, Trans Union updated Plaintiff's Wells Fargo Account in accordance with Wells Fargo's investigation. However, instead of correcting the account to show that it had been reaffirmed and Plaintiff continued to make all of his required payments under the reaffirmation agreement, Wells Fargo simply told Trans Union to delete Plaintiff's Wells Fargo tradeline from his Trans Union credit report, expressly contrary to his Dispute Letter that specifically said "DO NOT DELETE."

35. Additionally, on Plaintiff's November 23, 2019 Trans Union Disclosure, while his Wells Fargo Account tradeline inaccurately included "Remarks: Chapter 7 Bankruptcy," the tradeline had beneficially included over two years' worth of positive payment history, from April 2017 through June 2019. This positive payment history should have remained on the Wells Fargo tradeline, along with Plaintiff's consistent payments under the Reaffirmation Agreement through present. By deleting Plaintiff's Wells Fargo Account tradeline upon reinvestigation, Wells Fargo suppressed the positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy. That is, the

material omission of Plaintiff's positive payment history on his Wells Fargo Account was patently incorrect because he was in fact making timely monthly payments from at least April 2017 through present.

36. This failure by Wells Fargo caused Plaintiff's Trans Union Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Wells Fargo.

37. Upon information and belief, the payment history segment has a significant overall impact on the various consumer reporting products Trans Union offers credit decision makers.

38. Deleting the Wells Fargo Account, which included the Wells Fargo Account's payment history reporting, was patently incorrect because it did not reflect Plaintiff's actual payment performance from at least April 2017 through present.

39. Wells Fargo's failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to Wells Fargo from at least April 2017 through present.

40. Similarly, on January 13, 2020, Plaintiff received a "reinvestigation" report from Experian ("Experian Reinvestigation"). Experian indicated that it had received the Experian Dispute Letter and investigated Plaintiff's dispute.

41. Upon information and belief, Experian updated Plaintiff's Wells Fargo Account in accordance with Wells Fargo's investigation. However, Wells Fargo failed to correct the inaccuracy Plaintiff disputed, and the Status of "Discharged through Bankruptcy Chapter 7" remained.

42. In addition to maintaining the bankruptcy indicator on the Wells Fargo tradeline, Wells Fargo's investigation also failed in another significant respect: it failed to report his

continuing positive payment history. Specifically, the Experian Reinvestigation showed that before Plaintiff's dispute, payment history for April 2017 through June 2019 was displayed on his report. However, after Plaintiff's dispute, the payment history remained only through June 2019, failing to continue through the date of the Experian Reinvestigation, January 2020. By not updating the payment history upon reinvestigation, Wells Fargo suppressed the positive credit data that would have provided Plaintiff a true "fresh start" after filing Bankruptcy. That is, the material omission of Plaintiff's positive payment history on his Wells Fargo Account was patently incorrect because he was in fact making timely monthly payments from at least April 2017 through present.

43. This failure by Wells Fargo caused Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Wells Fargo.

44. Upon information and belief, the payment history segment has a significant overall impact on the various consumer reporting products Experian offers credit decision makers.

45. Failing to continue updating the Wells Fargo tradeline payment history section was patently incorrect because it did not reflect Plaintiff's actual payment performance from July 2019 through present.

46. This failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to Wells Fargo from July 2019 through present.

47. A reasonable investigation by Wells Fargo at any point following either Dispute Letter would have indicated Plaintiff reaffirmed his Wells Fargo debt and continued to make all

required payments as agreed. A reasonable investigation also would have removed the bankruptcy indications from the tradeline.

48. Additionally, upon information and belief, Experian also updated Plaintiff's TBOM Account in accordance with TBOM's investigation. However, TBOM failed to correct the inaccuracy Plaintiff disputed, and the Status of "Paid in settlement" remained, with no indication that the TBOM Account had been included and discharged in Plaintiff's bankruptcy. TBOM's failure to update Plaintiff's TBOM Account to include the bankruptcy discharge was patently incorrect because the account was actually discharged in bankruptcy. This inaccuracy was also materially misleading because it created the misperception that Plaintiff's TBOM Account was not included and discharged in his bankruptcy.

49. A reasonable investigation by TBOM at any point following the Experian Dispute Letter would have indicated that Plaintiff's TBOM Account was included and discharged in bankruptcy and updated the tradeline accordingly.

50. Wells Fargo and TBOM failed to conduct a reasonable investigations as required by 15 U.S.C. § 1681s-2(b), failed to review all relevant information Plaintiff provided in his Dispute Letters, as required by and in violation of 15 U.S.C. § 1681s-2(b), and wrongly continued reporting inaccurate information in connection with Plaintiff's credit reports.

51. Moreover, Plaintiff has suffered concrete and imminent harm to his creditworthiness. The Trans Union Disclosure demonstrated that at least thirty non-Trans Union entities procured Plaintiff's consumer reports during the two-year period preceding the Trans Union Disclosure.[4] Similarly, the Experian Disclosure demonstrated that at least nineteen

---

[4] This does not include a list of entities who appear to be affiliated with Trans Union, although Plaintiff does not concede that some or all of these entities would also constitute third parties.

non-Experian entities procured Plaintiff's consumer reports during the two-year period preceding the Experian Disclosure.[5] Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

52. Plaintiff's continued efforts to correct Wells Fargo and TBOM's erroneous and negative reporting of the reaffirmed debt by communicating Plaintiff's dispute with Trans Union and Experian were fruitless.

53. Wells Fargo's continued inaccurate and negative reporting of the reaffirmed debt in light of its knowledge of the actual error was willful. Indeed, Wells Fargo clearly knew about the reaffirmation agreement, as it was party to the reaffirmation agreement and filed it in Plaintiff's bankruptcy. Similarly, TBOM's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

54. Also as a result of Wells Fargo's and TBOM's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress. For example, Plaintiff suffered multiple credit denials over the past several months. He has also lost

---

[5] This does not include a list of entities who appear to be affiliated with Experian, although Plaintiff does not concede that some or all of these entities would also constitute third parties.

wages from missing work, along with missing sleep, due to stress and worry about his credit reporting inaccuracies and the consequences.

55. By inaccurately reporting account information relating to the Wells Fargo reaffirmed debt and the TBOM discharged debt after notice and confirmation of their errors, Wells Fargo and TBOM failed to take the appropriate measures as required under 15 U.S.C. § 1681s-2(b).

56. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and he is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants on Count 1:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and
- any other relief the Court may deem just and proper.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 13, 2021

Respectfully submitted,

/s/ David H. Krieger, Esq.
David H. Krieger, Esq.
KRIEGER LAW GROUP LLC
2850 W. Horizon Ridge Parkway, Ste. 200
Henderson, Nevada 89052

Miles N. Clark, Esq.
Shaina R. Plaksin, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

Attorneys for Plaintiff